### Franklin Perin, Tutor, v. Charles McMicken's Heirs et als.

A disposition, in a testament, having for its object the foundation and maintenance of colleges under the administration of a municipal corporation, as trustee forever, is a prohibited *fidei commissum* and substitution.

As personal property has no *situs*, Article 483 of the Civil Code, which declares that persons who reside out of the State, cannot dispose of the property which they possess here, in a manner different from its laws, will not apply to such personal property, as, at the death of the testator abroad, happens to be within our territorial limits.

The trust estates of the common law were intended to be prohibited under the general term of *fidei commissa*.

The right of the *cestui que trust*, under the common law, cannot be assimilated to the usufruct under our law.

The absence of interest in the trustee, will not take the trust out of the prohibition of our Civil Code.

A bequest vesting a merely legal or apparent estate in a person, to be preserved and returned to his children and grandchildren, with the obligation upon such person, during his possession, to apply the fruits and revenues of the property devised to the benefit of a third person, who is neither owner nor usufructuary in the sense of the Louisiana law, constitutes a *fidei commissum* reprobated by that law.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.

*F. Perin, in pro. per.*, and *C. Roselius*, for plaintiff and appellant. *Benjamin, Bradford & Finney*, for defendants and appellant. *Race & Foster* and *H. T. Hays*, for intervenors and appellees.

BUCHANAN, J. *Charles McMicken* died at Cincinnati, leaving a will, which has been admitted to probate in Cincinnati and in New Orleans, and by which he disposed of a large estate, real and personal, in Ohio, Louisiana and other States.

*Mr. McMicken* died without ascendants or descendants. His nearest of kin, him surviving, were one sister, and the descendants of another sister, and of a brother previously deceased.

The plaintiff is the surviving husband of a neice of the said *McMicken*, and brings this suit in behalf of his three minor children, who are, collectively, heirs at law, for one-ninth part, of the said *McMicken's* estate, by representation of their mother, deceased.

His petition alleges that the will of *Charles McMicken* is null, so far as it disposes of his property in Louisiana, for the following reasons :

1st. That a certain bequest to the city of Cincinnati, in said will contained, is contrary to the law of Louisiana, prohibiting substitutions and *fidei commissa*.

2d. The said city of Cincinnati is a foreign corporation, and without capacity to take the property situated in this State.

3d. The said city is without the constitutional and legal capacity to take or hold property in trust for any purposes whatever.

4th. The said bequest involves a perpetuity of ownership, putting the property forever out of commerce.

5th. The colleges mentioned in said will, for whose use the said bequest was intended, were not in being at the testator's death ; and the " white boys and girls" for whose benefit the said colleges were designed to be created, maintained, &c., are not described with sufficient certainty to show for whom the donation was intended ; they are not designated as a class of persons belonging to any

corporate or territorial limits; the bequest is, therefore, void for a want of a devisee.

6th. The will is not clothed with the formalities prescribed by the laws of Louisiana, to devise the immovable property situated in this State.

The city of Cincinnati, and the testamentary executor of *Charles McMicken*, have severally appeared and pleaded to this action, asserting the validity of the will and of the bequests therein contained, to the city of Cincinnati.

To this suit has also intervened, *Andrew McMicken*, who joins the testamentary executor in maintaining the legality of the last will of *Charles McMicken*, and specially avers that the bequest contained in article four of said will, vested title, in fee, to all the property designated in the first seven sections of said article four, in the three minor children, issue of the marriage between *Andrew McMicken* and *Rachel Ann*, his wife; all of which children were alive at the death of said *Charles McMicken;* and that the said *Rachel Ann McMicken*, their mother, has the usufruct thereof, during her life.

Plaintiff, answering the petition in intervention of *Andrew McMicken*, denies that the will has any legal effect or validity as regards the property mentioned in said intervention, and pleads that the devise of said property to said *Andrew*, in trust for his wife and children, is contrary to the laws of this State, prohibiting substitutions and *fidei commissa*.

The District Judge, upon these pleadings and the evidence adduced, decided, that the will of *Charles McMicken*, so far as it relates to the movable property in this State, left to the city of Cincinnati, and the bequest to *Andrew McMicken*, be maintained; and so far as relates to the bequest of immovables in this State to the city of Cincinnati, that said will be declared null and void.

From this judgment, the plaintiff, the city of Cincinnati, and the testamentary executor of *Charles McMicken*, have appealed.

The dispositions of the testament under consideration, in relation to the city of Cincinnati, have for their object, the founding and maintaining of two colleges in that city, and under the administration of that municipal corporation, as trustee, forever.

These dispositions are identical in principal with those contained in the will of *Isaac Franklin*, (7 An. 399,) the legality of which was very maturely considered, and pronounced upon by all the Judges of this court *seriatim*. Three of the four Judges who composed this court, concurred in a decree, that the bequest contained in the will of *Isaac Franklin*, in favor of *James* and *William Franklin*, in trust for the purposes therein specified, be set aside, so far as it bears upon real estate, slaves and immovables in the State of Louisiana.

Upon the authority of that case, the first and fourth grounds of objection to the testamentary dispositions in favor of the city of Cincinnati, in plaintiff's petition set forth, must be maintained.

The Civil Code, Article 483, declares that persons who reside out of this State, cannot dispose of the property which they possess here, in a manner different from its laws.

As personal property has no *situs*, this Article has not been considered to apply to property of that kind, which, at the death of the testator, resident abroad, happens to be within our territorial limits. See the case of *Wehre's Succession*, lately decided.

But it is contended in argument, in conformity to one of the grounds of nullity charged in the petition, that the city of Cincinnati was without legal capa-

city to take or hold property in trust. Upon this point, the counsel for plaintiff rely upon the Constitution of Ohio, Article viii, section 6, Swan's Rev. Stat., 22, and the Ohio Statutue of May, 3d, 1852, Swan, pp. 960 and 979.

We are spared the necessity of examining this subject, however, for it is admitted in argument, that the question of the capacity of the city of Cincinnati to execute this trust, has been decided by the Circuit Court of the United States in Ohio, affirmatively. It appears that an appeal is now pending from that decision, before the Supreme Court of the United States. A reservation will be made in our decree, to meet the contingency of a reversal of the judgment of the Circuit Court.

The decision of the intervention of *Andrew McMicken* in this cause, turns upon the construction of clause IV of the will of *Charles McMicken*, which reads as follows :

· "I give and devise to my nephew, *Andrew McMicken*, in trust, for the use and benefit of his wife, *Rachel Ann*, during the term of her life, and after her death, to their children, in fee, share and share alike : the issue, however, of any such child or children of the said *Andrew*, now or hereafter born, to take by representation, as I have already provided in Item No. 1 (one), in the words of the devise to the children of *Charles M. Carr*, deceased, and of his sister, *Mary Carr*, the following real and personal estate, to wit :

1. All my real estate in the county of Madison, and State of Illinois, with power on the part of the said *Andrew*, to sell at public and private sale, any or all of the said land, and to convey the same to the purchasers in fee ; the proceeds of such sale to be invested in other real estate, or in good securities, to be held for the use and benefit of said *Rachel Ann* and the said children, in trust as aforesaid.

2. All that tract of land in the parish of West Feliciana and in the State of Louisiana, in the Tunica settlement, containing five hundred arpents, and known as the " Carendine Gore Tract," and which was purchased at the sale of the estate of *William Collins*, about the year eighteen hundred and forty.

3. All my lots and lands in the town of Bayou Sarah and other lands on Thompson's Creek, in the parish of West Feliciana, in the State of Louisiana.

4. All that tract of land, containing about two hundred and fifty arpents, situated in the parish of East Baton Rouge, on the Cypress Bayou, known as the James McGill tract. ·

5. All that tract of land in the State of Kentucky, on the Big Sandy River, containing about ten thousand acres, and known as the Benjamin Wyncop tract or patent, and which is now the subject of a suit in ejectment ; reserving, however, if recovered, to the heirs of *Joshua F. Doyle*, one-third of the net proceeds, after the sale thereof, and after the payment of all costs and charges, and expenses.

6. All my land in the State of Texas, except the grants in the names of *Adam Carraway* and *James Brown*, which are hereinafter devised to *Levi S. McMicken*. All the lands as above devised, to be sold and disposed of by said *Andrew*, at his discretion.

7. All that lot of ground in Spring Grove Cemetery, near Cincinnati, as a burial place for the family of my brother and sister, and of my nephews and neices, and of their descendants ; and also my pew, No. 75, in the Ninth street Baptist Church.

8. All debts now due me in Cincinnati, New Orleans, or elsewhere, by judgment,

bond, note, accounts, or otherwise ; all the rents, issues and profits, which at the time of my death may be due me, from the land above specifically devised to my nephew, *Andrew McMicken ;* my carriages and horses; all my library and household furniture, of every description, and any other personal property not hereinafter specifically devised, which said library, furniture and personal property, shall be equally divided by the said *Andrew,* with my neice, *Lizzie McMicken.*

9. I permit my nephew, the said *Andrew McMicken,* and my neice, *Lizzie McMicken,* if either see fit, to occupy, free of rent, and for the period of five years after my decease, the house in which I now reside. This permission, however, shall not interfere with the objects of my devise to the city of Cincinnati, as to the lot by which the said building is surrounded."

It will have been observed, that the above clause or item of the will, makes mention of the Item No. one, as governing the heritable rights of the issue of the children of *Andrew McMicken,* devised to such issue by the Item No. IV, now under consideration. It becomes, therefore, necessary to a perfect understanding of the scope and operation of this item, that we should copy so much of the Item No. one, as is referred to therein. It is as follows :

" I give and devise to *Charles M. Carr* and *Andrew McMicken,* and to the survivors of them, his executors and administrators, all my real estate in Clinton county, Illinois, and St. Charles county, Missouri, in trust, nevertheless, for the use and benefit of the children of the said *Charles M. Carr* and of *Mary Carr,* who intermarried with *Henry Lear,* who is now deceased, to be divided between the said children and their heirs, share and share alike, when the last child shall have attained the age of twenty-one years; that is to say, the said lands shall be divided by the said children into parts of equal value, and each child shall choose his or her respective portion by lot ; but if the whole, or any portion of the said land cannot be equally divided, or the said children should fail to agree upon a division, then such portion which cannot be divided, or upon a division of which said children fail to agree, I direct, shall be sold by the said trustees, who shall divide the proceeds thereof, equally among the said children or their heirs. The issue of any child or children of the said *Charles M. Carr,* or of his sister, the said *Mary Carr,* or any grandchild, shall take, by representation of their parents respectively, such share of the said lands or of the proceeds thereof, as the said child would have been entitled to receive, had he or she been living at the time of the division or sale of the said estate."

. It is contended by plaintiff's counsel, that the item of the will No. IV contains a double trust, or *fidei commissum ;* that the legal ownership is given to one, to preserve for another, for the term of a life ; and then to return to persons, even in the fourth generation removed from the testator, in fee. C. C. 1507 ; *Provost* v. *Provost,* 13 An. 574.

This clause in the will created, and was intended to create, a trust estate of the common law. The property devised under it was situated in Illinois, Kentucky, Ohio, Texas and Louisiana ; and it cannot be supposed that the testator intended his words to be construed in a different sense in Louisiana, from their received signification in Ohio.

The trust estates of the common law, with their refined distinctions and complicated limitations, were intended to be prohibited under the general term of *fidei commissa.* The *legal* estate, by that system of laws, is vested in the *trustee.* He alone can defend the possession in the courts of law ; but the income and profits thereof belong wholly or in part to another, the *cestui que trust.* The du-

PERIN
v.
McMICKEN.

ties of the trustee are to permit the *cestui que trust* to receive the profits; to account; to execute such conveyances *in accordance with the provisions of the trust*, as the *cestui que trust* shall direct; and to defend the title to the land in any court of law or equity. The *cestui que trust* is entitled to the beneficial interest in the estate, and may receive the profits, and even possess the estate, where he is the only person interested, or the duties of the trustee do not render it necessary to retain possession. See 2 Bouvier, 332, No. 1911 et seq.

Now, as the legal estate vests in the trustee, who alone can appear in justice to defend the title, the rights of the *cestui que trust* cannot be assimilated to the usufruct, where the usufructuary has a real right and may stand in judgment to defend it. C. C. 549.

Again, the trustee holds the legal title, not only for the benefit of the present *cestui que trust*, but for the benefit and protection of the remainder men and those claiming by representation, and in this case, until the partition which was to be made after the death of the *cestui que trust*, and the last child had attained 21 years. 7 An. 419; 2 Howard 650, *Gaines v. Chew.*

It cannot be said that this trust is one of those not prohibited by the Civil Code, because it is not coupled with interest in the trustee. Very few of the common law trustees have any interest. They merely stand seized of the estate for the benefit of others. Neither was it necessary, under the Roman law, in its origin, that the testamentary heir should derive any advantage from the execution of the *fidei commissum*. The Falcidian and Trebellianic portions were invented for the purpose of making it the interest of the instituted heir charged with *fidei commissa*, to accept the succession; and, because substitutions and *fidei commissa* were prohibited by the Code, these portions were also abolished. C. C. 1507, 1608; Domat, Book 4, Tit. 3, and Book 5, Tit. 4.

The bequest contained in item IV of the will of *Charles McMicken*, vesting a merely legal or apparent estate in *Andrew McMicken*, to be preserved and returned to his children and grandchildren, with the obligation upon the said *Andrew*, during his possession, to apply the funds and revenues of the property devised to the benefit of a third person (his wife,) who is neither owner nor usufructuary in the sense of the Louisiana law, constitutes a *fidei commissum* reprobated by that law.

It is clear, that the testator did not intend to confer any benefit upon the apparent legatee, *Andrew McMicken*, who is merely a person interposed for the purpose of creating and perpetuating through several generations an estate or title far removed from the simplicity of estates known to our laws; an anomalous estate in Louisiana, although familiar to, and even favored by the system of laws which governs Ohio and the other States of the Union. This complicated and artificial estate, it is the policy of our legislation to exclude from Louisiana. It becomes therefore our duty to declare the whole disposition in question, void, as to the property situated in Louisiana; which must consequently be divided among the heirs-at-law, as *ab intestato.*

The objection to the will, that it was not made in the form required by the law of Louisiana, seems to have been waived in argument.

It is, therefore, adjudged and decreed, that the judgment of the District Court, as regards the city of Cincinnati, be amended by reserving to plaintiff, in his capacity of tutor of his minor children, his action for the recovery of the personal effects bequeathed by the testator, *Charles McMicken*, to the city of Cincinnati, in case the decision of the Supreme Court of the United States, upon the appeal

now pending from the Circuit Court of Ohio, should be adverse to the city of Cincinnati; and that, as so amended, the judgment of the District Court between the plaintiff and the city of Cincinnati, be affirmed; that the judgment of the District Court upon the intervention of *Andrew McMicken*, be avoided and reversed; and that there be judgment upon the said intervention, against the said intervenor, and in favor of the plaintiff, annulling and avoiding the item IV of the will of *Charles McMicken*, as to immovable property situated in the State of Louisiana; that the minor children of plaintiff named in the petition be recognized and sent into possession, through the plaintiff as their tutor, of the estate of *Charles McMicken*, their grand-uncle, deceased, situated in the State of Louisiana, as heirs-at-law, for one-ninth of said *Charles McMicken's* succession; that this cause be remanded to the District Court, for the purpose of making a partition among the heirs-at-law of said *Charles McMicken*, of the property of his succession in Louisiana; and that the costs in both courts heretofore incurred (inclusive of this appeal,) be paid by the city of Cincinnati and the executors of *Charles McMicken*, defendants, with the exception of the costs of the intervention of *Andrew McMicken*, which are to be paid by the intervenor.

DUFFEL, J., took no part in this decision.