(48 South. 766.)

No. 17,189.

Succession of STAUB.

(March 1, 1909.)

WILLS (§ 775*)—BEQUESTS—CONSTRUCTION.

Testatrix bequeathed a specified sum to "the city insane asylum" of a designated city. At the time of the execution of the will the city maintained the insane at such institution. At the death of testatrix the city had ceased to permanently care for the insane at such institution, but temporarily cared for them, until they could be transferred to the state asylum, either at a house of detention, or at a retreat, or the city jail. *Held,* that the bequest was to the city, for the benefit of the insane falling to the charge of the city, and it did not lapse because it ceased to permanently care for the insane.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 775.*]

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

In the matter of the succession of Anna Staub, deceased, involving the question whether a bequest to the City Insane Asylum of New Orleans had lapsed. From a decree adjudging that the legacy had lapsed, the city appeals. Reversed.

John Fowle Crosby Waldo, Asst. City Atty., for appellant. Félix Jonathan Dreyfous and Alfred David Danziger, for appellee.

PROVOSTY, J. Mrs. Anna Staub made her will in 1881, and died in 1908. She instituted the Little Sisters of the Poor her residuary legatee, and made a bequest of $1,000 to her sister-in-law, and added that, should her sister-in-law die before her—

"then the legacy of $1,000 shall accrue to the below-named insane asylum.

"To the City Insane Asylum I give and bequeath two thousand dollars."

This bequest is contested on the ground that the asylum ceased to exist before the death of the testatrix and that the legacy has consequently lapsed.

At the time this will was made the law required, as it has done since and does now, that the insane falling to the charge of the public should be sent to the State Insane Asylum at Jackson, La. But at that time the city, for some reason not explained, sent none of her insane to Jackson, but cared for them herself. She kept them in one of the wings of an old ramshackle iron structure belonging to the United States government, which had been used at one time as a marine hospital, but which for years had been abandoned by the government and left to shift for itself. Whether this use of the building was with the permission of the government, or even by virtue of any city ordinance, the record does not show. The inference would be that the whole arrangement was a mere expedient, or makeshift, resorted to by the city officer to whose department this branch of the public service belonged, on his own initiative. And this is all the more probable, considering that the arrangement was put an end to by one of the district judges of the city, who at the instance of a private citizen went to the place, examined all the inmates, committed to Jackson all those found insane, some 60, and released the rest, some 30. This was in September, 1882. Such as the place was, however, it was popularly known as the "City Insane Asylum." Thereafter, and until the completion of the House of Detention in 1902, those of the indigent insane who were not sent to the Jackson Asylum were

kept at the Louisiana Retreat and in the city jail. As many were kept at the Louisiana Retreat as that institution could receive, or the city afford to pay for. The rest were kept at the city jail. In the construction of the House of Detention, the lower story of one of the wings was specially designed for the insane, and is put to that use. But it has proved inadequate, and the Louisiana Retreat continues to be utilized to its limit, and, oftener than not, a surplus have to be temporarily harbored at the jail. The testimony shows that the city has always had, and is likely always to have, in her charge a large number of the unfortunates.

The case here presented is assimilated by the learned counsel for the executrix to that of City v. Hardie, 43 La. Ann. 251, 9 South. 12, where the legacy was made in these words:

"To the support of asylums, in the faith of the Protestant religion, especially devoted to the care of the aged persons"

—and where the court found that the legacy had lapsed because the intended legatee was some institution which the testator supposed would be in existence at the date of his death, and none such proved to be then in existence. The difference between that case and the one at bar is that a legacy to an asylum conducted by the city as a part of the ordinary administration of her affairs, by whatever name such asylum may be popularly known, cannot possibly be construed into a legacy to a nonexisting institution, since it is necessarily to the city for the benefit of the insane falling to her charge. As was observed in the Fink and Vance Cases, 12 La. Ann. 319, and 36 La. Ann. 559, the legacy is not to the building in which the insane are housed. Mrs. Staub did not institute as her legatee the old building, belonging to the United States government, in which, for all we know, the city and her charges were mere squatters, but

manifestly intended that her charity should be administered by the city for the benefit of the unfortunate insane in the charge of the city. A legacy to the city jail would not lapse because the old jail had been torn down and a new one constructed. The only change that was brought about by the discontinuance of the old so-called City Asylum was that the insane have since then been kept in a different place. Had Mrs. Staub died immediately after having made her will, the legacy would have been received and administered by the city for the benefit of the indigent insane falling to her charge, and precisely the same thing occurs now. The legacy is received and administered by the city for the benefit of the indigent insane falling to her charge. The place where these intended beneficiaries are taken care of is of no consequence. What difference it would make if the evidence showed that since the discontinuance of the so-called asylum there had not been, and it was not likely there ever would be, any insane to be taken care of by the city, is a question needless to be considered, since the evidence shows that such a contingency is entirely improbable.

A point is sought to be made of the circumstance that the city had permanent charge of the insane while the so-called City Insane Asylum existed, whereas since then she has had charge of them only temporarily, until she can transfer them to Jackson. But we take it to be plain that, the legacy being for the benefit of the insane in the care of the city, irrespective of individuals, it can make no difference whether the particular patients are to spend one day or their entire lives in the hospital, so long as the supply of them is constant and unfailing, which the evidence shows is the case.

The following note of Jarman on Wills (4th Am. Ed.) p. 452, is quoted in the brief of the learned counsel for the executrix:

123 LOUISIANA REPORTS.

"The inclination of the courts is favorable to ·cy pres execution; but this will not be done where the gift is clearly to a charitable institution, by name, which had ceased to exist before the testator's death."

We have not been able to get the decision upon which this note is founded. Doubtless, upon examination, the legatee there in question will be found to have been some autonomous institution, and the case, therefore, to be analogous to that of Hardie's ·Case, supra, in other words, that the legatee was a distinct legal entity, capable of re-·ceiving by testament at the time the will was made, but which had gone out of existence by the time the testator died. It will be noted that the text to which said note is appended would justify a construction very much more latitudinarian than any that can be necessary for sustaining the legacy in the ·instant case, or even for sustaining such a legacy as that in the Hardie Case, supra.

It is therefore ordered, adjudged, and decreed that the testamentary executrix of Mrs. Anna Staub, deceased, pay to the city ·of New Orleans the legacy of $3,000 contained in the will of the said deceased in favor of the City Insane Asylum of the said city, to be applied to the uses named in the said will; the succession to pay all ·costs.