Statement of the Case.
MONROE, J.
Edward Thompson died in New Orleans, in January, 1908, leaving an estate valued at $157,317.62; leaving, also, as his only heirs at law, three unmarried daughters and three minor grandchildren, children of his predeceased son, Edward Thompson, Jr.; and, leaving a will, containing, besides certain special legacies, the following dispositions, to wit:
“Two thirds of the residue of my property, real and personal, I desire divided into four equal parts. I bequeath to my three daughters, Grace, Ellen and Gabriella, each, one part, and to my three grandchildren, Edward, Stewart and Margery, children of my deceased son, Edward, one part, first deducting from the said one part all the monies loaned or advanced to my son Edward, prior to his death, and that I have since contributed for the support, maintenance and education of his wife and three children, since his death, as will be shown by his personal account and the account on his estate, on my books. In the event the one part, of the % of all my real and personal property, bequeathed to each one of my three daughters, does not reach the sum of $20,000, I bequeath to my three daughters, Grace, Ellen and Gabriella, as an extra portion, not subject to collation, of the remaining one third of all my real and personal property, sufficient to make the portion of each amount to $20,000.
*******
“The residue of my property, real and personal, after making the foregoing bequests, or any bequests that I may hereafter make, I give and bequeath to the Fink Home, or Asylum, for indigent widows and maidens, in New Orleans, La., and this bequest is made upon the condition, to be made a matter of record at the institution, that a comfortable room and support will be furnished, at the said Home, for either one, or all, of my three daughters, should misfortune render them homeless at any time.”
According to the account filed by the executors, after paying the debts, two-thirds of the remainder of the estate will yield a dividend of $26,096.75 for each of the daughters of the deceased, and a like amount, less $6,480.99 (being the amount charged on the testator's books against Edward Thompson, Jr., and his estate), for the minor grandchildren ; and, deducting from the remaining one-third the amounts bequeathed to certain *951 ■special legatees and the commission charged by the executors, there is a residuum, applicable to the bequest to the “Fink I-Iome,” of $46,657.55.
With reference to that bequest, however, the executors say:
“Accountants are of the opinion that there is no such institution as the ‘Fink Home, or Asylum, for Indigent Maidens and Widows,’ in New Orleans, La., that there is, in this city, an institution called ‘Fink’s,’ or ‘Fink,’ Asylum, arising out of the will of John D. Fink, described in the report of the case of Ferdinand H. Fink et al. v. Executor of J. D. Fink, 12 La. Ann. 301 et seq.; that said institution has existence under the will of John D. Fink, and the proceeds of his estate, received by said institution thereunder; and, under the will of John D. Fink, said institution is to be used solely as an asylum for protestant widows and ■orphans; that the three daughters aforesaid of the testator, Edward Thompson, are neither widows nor orphans, none of them having married and none of them being less than 25 years .old; that accountants are of opinion that said institution cannot, validly, comply with the aforesaid condition made by the testator, Edward Thompson, and that said institution is not entitled to the aforesaid residue, but that the testator’s (Edward Thompson’s) said three daughters, and said three minors, through their tutrix, are entitled to said residue, in the proliortion of one-fourth to each of said three .daughters and one-fourth to said three minors, together; said residue being subject to such inheritance tax as the court may fix, and accountants propose to so distribute said residue, and accountants submit the matter to the court.”
The city of New Orleans, alleging that it is the proper trustee of all funds .donated or bequeathed for the benefit of indigent widows and maidens, within its territory, where there is’ no special trustee named, made opposition to the proposed disposition of the residue in question, on the grounds that it was the intention of the testator “that the said residuary fund should be used for the same purpose as the Fink fund, and made the contingency only that in the event either of his three daughters should become indigent- and homeless the Fink Asylum would supply them, or either of them, with a home and support. And opponent further says tliatsaid reservation or proviso in no manner infringes upon, or diverts, in any manner the use of the original Fink Fund.” And, thereafter, the mayor, authorized by ordinance of the council, appeared before a notary public, and, on behalf of the city of New Orleans, formally accepted the said residuary bequest.
Mrs. Edward Thompson, Jr., as tutrix of her minor children, also opposed the account, “in so far as the same attempts to charge them (the minors) with the sum of $6,840.09, on the ground that they owe no part of said amount, and same cannot be deducted from their share of this succession; and, against the items making up said sum, she specially pleads the prescription of one, three, five, and ten years.”
It appears from the evidence that, by a will, which was offered for probate in 1856, John D. Fink, after other testamentary dispositions, made a bequest, in the following language, to wit:
“It is my wish and desire, and I do hereby declare the same to be my will, that, after the payment of my just deb's and the several legacies herein above mentioned, the proceeds of my whole estate, property, rights, effects and credits be applied to the erection, maintenance and support of a suitable asylum, in this city, to be used, solely, as an asylum for protestant widows and orphans, to be called ‘Fink Asylum,’ and I do hereby request and authorize my friend Diederich Bullerdick, after my decease, to name and appoint three worthy and responsible persons as trustees to carry out my intention respecting the aforesaid asylum.”
In a litigation, begun by the nearest of kin and heirs at law of the testator, it was held, by our predecessors in this court, that the beneficiaries of the foregoing bequest were the protestant widows and orphans of New Orleans, and that the charity created by the will could be administered only by the city corporation of New Orleans. Fink v. Fink’s Ex’r, 12 La. Ann. 301.
It also appears that the city of New Orleans accepted the trust, and has been, and is now, through officers selected by it, ad *953 ministering the fund left by the decedent in accordance with the mandate conferred by the will; an asylum called “Fink Asylum” having been erected and being now maintained from the said fund, and being governed by the following rule (among others) to wit:
“No. 11. No female, unless a widow, shall be admitted as an inmate over sixteen years of age and no male over ten years of age. No female shall remain an inmate after eighteen years and no male after twelve years of age.”
It is not asserted that there is any other institution bearing the name of Fink in New Orleans, and it is not denied that the Fink Asylum above mentioned is the “Home” or “Asylum” to which the testator, Edward Thompson, intended to leave the residue of his estate.
It further appears that the personal account of Edward Thompson, Jr., and the account of his estate,' on the books of the testator, show a debit of $6,840.99. On the case thus presented, the judge a quo gave judgment dismissing the oppositions of the city of New Orleans and the tutrix, and homologating the account, as filed, and the opponents have appealed.
Opinion.
On Opposition of the City of New Orleans.
The grounds relied on by the city of New Orleans, for the maintenance of its opposition are substantially, as follows:
(1) That the testator regarded the lSgitime, to which his daughters would become entitled, as sufficient for them, and that his desire to leave the disposable portion of his estate to charity was the impelling motive of the bequest which is to be here considered.
(2) That the city of New Orleans has accepted the bequest, “in full accordance with the terms and conditions of the said last will and testament of the said Edward Thompson,” and is able and willing, as trustee, to “carry out” the charge attached thereto, and that the question of its right to provide a comfortable room and support, in the Fink Asylum, for the testator’s daughters, should occasion require, is one which concerns only the heirs of Fink, and which the executors- and daughters of Thompson are without interest to raise.
(3)That, if the condition attached to the-bequest is legally impossible of fulfillment, it should be considered not written.
Our reading of the will leads us to the conclusion that the main object of the testator was to make such provision for Ms three unprotected and unmarried daughters as would secure them a safe and comfortable place of refuge in the event of their losing the money which they were to inherit. The bequest to the “Home” (to use the language of the will) “is made upon the condition, to be made a matter of record at the institution, that a comfortable room and support will be furnished, at said Home, for either one, or all,of my three daughters, should misfortune-render them homeless at any time.” Not only is the bequest made upon the condition imposed by the testator, but, in order that there should be no misunderstanding in the matter, the fact that it was so made, together with the condition itself, are “to be made a matter of record at the institution.”
The bequest cannot, therefore, be said to-have been intended as a free gift to charity, any more than the donation of a right of way, on condition that a railroad be built on it, could be said to be a free gift to the railroad company, and the donee can no more-take the property, unless it is able to comply with the condition, in the one case than in the other.
As the daughters of Edward Thompson are all past 25 years of age, and have never married, there is no contention that they are-either orphans or widows, within the meaning of those words as used in the will of John D. Fink, and hence they can have no right to admission into an asylum erected *955 with money left by Fink, and “to be used solely as an asylum for protestant widows and orphans.”
It is said, however, that the city of New Orleans has accepted the bequest of Edward Thompson, in accordance with the terms and •conditions thereof, that it is willing and able to comply with the condition imposed, and that the question of its right to do so is one which concerns the heirs of Fink, and not the executors or daughters of Thompson. We conceive that the violation of a trust, established by one who has departed this life, and therein the violation of the law which protects such trust, is a matter which concerns all who participate in such violation. But, assuming that the executors have no interest in seeing that the asylum or the city is in a position legally to comply with the condition upon which the city is to receive the legacy, and that the daughters of the testator have no interest in the question, whether they can be legally accommodated in the Fink Home, and assuming, also, that the heirs of Fink will be helpless, in the premises, we still have the “protestant widows and orphans of New Orleans,” who will be entitled to be heard in resistance of the intrusion into the home, provided exclusively for them, •of persons having neither moral nor legal right to enter there, and, above and beyond all, we have, as an obstacle to the course suggested, a principle of right which no court administering the law could ignore. John J). Fink, in departing this life, left the proceeds of the residue of his estate to “be applied to the creation and maintenance and support of a suitable asylum in this city, to be used solely as an asylum for protestant widows and orphans.” This court, by its decree, withheld the money so bequeathed from the heirs at law of the testator, on the ground that the bequest inured to the benefit •of the protestant widows and orphans designated ; and further held that the city of New ■Orleans, alone, could administer it. The city accepted the trust and the money, and in doing so, bound itself to discharge the one and expend the other in accordance with the terms of the bequest. It has expended part of the money in the erection of an asylum “to be used solely as an asylum for protestant widows and orphans,” since it could not legally have expended it for the erection of an asylum to be used for any other purpose, and so long as the asylum, thus erected, continues to be maintained by other of the money so received, it cannot be used by the city, without a violation of its trust, for any other purpose than that for which it was erected. Nor can the city be heard to say that it is willing and able to violate its trust.
In disposing of the remaining ground relied on by the city, our learned Brother of the district court says:
“But the testator added a condition to this legacy of such a nature that, if it be impossible or illegal, the bequest itself is null, notwithstanding article 1519 of the Civil Code. The French commentators agree, and the French Court of Cassation, interpreting a similar article, in the Code Napoleon, has repeatedly decided, that when the condition of a legacy is such that it is the prime, or moving, cause for making the legacy, without which it would not have been made, in that case, the impossibility or illegality of the condition carries with it the nullity of the legacy itself. See Fuzier-Hermann on C. N. 900, Nos. 158, 159, 170, 171.”
We have nothing to add to this, save that the rule stated is, and must needs be, the same in Louisiana as in France, since it is founded in the principle, recognized everywhere, that the first duty of a court, upon which is imposed the obligation of interpreting a will, is to ascertain the real intention of the testator.
On the Opposition of Mrs. Edward Thompson, Jr., Tutrix.
The opposition of the city of New Orleans being dismissed, the minor children of Edward Thompson, Jr., receive from the estate of their grandfather an amount considerably in excess of their legitime; the rest of his es *957 tate, lie was at liberty to dispose of as he thought proper. He willed that there should be deducted from the portion, otherwise falling to his grandchildren, the amounts advanced to his son and his son’s family (quoting) “as will be shown by his personal account and the account of his estate, on my books.”
It is not disputed that the personal account •of Edward Thompson, Jr., and of his estate, as it appears upon the books of the testator, show a debit of $6,480.99, but it is said that there is no proof of the correctness of the accounts. It is evident, however, that no such proof is necessary, for, if the testator had written that there should be deducted from the portion which would otherwise be inherited by his grandchildren, after the receipt of legitime, any specified amount, or, an amount which would be found stated on a particular page in his ledger, that amount -would necessarily be deducted, whether it had been advanced to the father of the minors or to them, or had not been advanced, since, having received the full amount reserved to them by law, the minors have no standing to question a disposition of their grandfather’s will which withholds from them a part of the ■disposable portion of his estate. This was .the view taken by the judge a quo, and we concur in the conclusion reached by him upon this, as upon the other opposition.
Judgment affirmed.