JANVIER, Judge.
This is an action for a declaratory judgment. It is brought under the provisions of Act No. 431 of 1948, Act No. 22 of the Extraordinary Session of 1948, the self-styled “Uniform Declaratory Judgment Act.”
The interested parties seek a declaratory judgment upon the status and legal relation of title to realty in New Orleans, which title is presently vested in the City and which property is described as follows: “A certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in any wise appertaining, situated in the First District of the City of New Orleans, in Square No. 404, bounded by Canal Street, Claiborne Avenue, Robertson Street and Cleveland (late Casquate and formerly Jackson) Street, which piece or portion of ground forms the corner of Canal Street and South Claiborne Avenue in said square hounded by Cleveland and *703 South Robertson Streets and begins at a point intersecting Canal Street and South Claiborne Avenue, thence extending southeasterly 128' 8" 1'" along Canal Street; thence at right angle in a southwesterly direction for a distance of IS?' 9" O'", thence in a northwesterly direction for a distance of 32' 0" 5'", thence in a northeasterly direction for a distance of 1(7 9" O'", thence in a northwesterly direction for a distance of 96' 7" 4'" to a point on the southeast side of South Claiborne Avenue, and thence in a northeasterly direction along South Claiborne Avenue for a distance of 120' 0" O'" to the point of beginning. Further described as Lots 1, 2, 3 and 4 Square No. 404, First Municipal District, City of New Orleans, as per survey of J. C. Gandolfo, Jr., Surveyor, dated August 9, 1937.
One of the petitioners, the First National Life Insurance Company, having agreed to buy the said property for $275,000 cash, is fearful that the City has not the legal right to sell the property at private sale and without advertisement. Therefore, the interested parties, including the said First National Life Insurance Company, have sought this declaratory judgment, the said insurance company refusing to accept title to the property until judicially ordered to do so in a judgment recognizing the right of the City to sell the property at private sale and without advertisement.
In the Civil District Court for the Parish of Orleans there was judgment ordering the said insurance company to accept title to the property and that company has appealed. The appeal was taken to the Supreme Court, counsel for appellant -believing that since the value of the property is in excess of $2000 the appeal should go to that Court. The Supreme Court held, however, that there is no amount in controversy and no fund to be distributed, and that, consequently, the appeal should have been taken to this Court and ordered the transfer here. See First National Life Insurance Company v. City of New Orleans, —- La. —-, 48 So.2d 145.
It is important that it be -clearly understood just how the City of New Orleans acquired title to the property. In a certain trust agreement set forth in a notarial act, executed on August 25th, 1937, Samuel Ze-murray, on certain terms and conditions, donated to the City of New Orleans 5,000 shares of the capital stock of United Fruit Company. In the trust agreement it was provided that the City should sell the said stock, or so much thereof as might be necessary, and with the proceeds should purchase all of the capital stock of Franklin-Liberty Realty Company, Inc. The realty company was the sole owner of the real estate in question and other property with which we are not concerned.
It was further provided that the realty company should be liquidated and that thus the City should acquire direct title to the said property. It was especially provided that there should be a corporation to be known as the Institute of Mental Hygiene for the City of New Orleans, to be organized as set forth in the trust agreement, and that the property which was to be acquired from the realty company should 'be managed and the income thereof used by the said Institute of Mental Hygiene.
The next provision in the trust agreement is the all important one in a determination of the issue presented to us. Under this provision the Institute was authorized to determine and decide whether or not any of the property acquired as above set forth should be “sold, leased or otherwise disposed of,” and it was further provided that if it should be decided to sell any of such property, the sale might be public or private and upon such terms and conditions as the Institute might fix, and that the proceeds of any such sale should be invested in other property selected by the Institute and acquired by and for the City.
There was a further provision to the effect that in the event any of the terms and conditions should be held invalid or unenforceable, the property acquired with the proceeds should revert to the donor or his successors, “it being specifically understood and agreed that this donation would not be made except upon the terms and conditions herein set forth.”
The record shows that the Institute was organized according to law and to the pro *704 visions of the trust agreement, and that the property with which we are now concerned was acquired hy the City also as provided in the trust agreement, -and that the agreement to sell the property to the First National Life, Insurance Company at private sale and at a price agreed upon was made on the decision of the Institute and on the terms and conditions fixed hy it.
The sole question presented then is whether the City, having thus acquired the property, may dispose of it at private sale and without advertisement.
Counsel call attention to two provisions in the charter of the City of New Orleans, Act No. 159 of 1912, as amended, with reference to the sale of property by the City.
Paragraph (c) of Section 1, amended Act No. 338 of 1936, reads as follows: “It [the City] may receive bequests, gifts and donations of all kinds of property in fee simple, or in trust for public, charitable, or other purposes, and do all things and acts necessary to carry out the purpose of such gifts, bequests and donations, with power to manage, sell, lease or otherwise dispose of the same in accordance with the terms of the gift, bequest or donation”. (Brackets ours.)
Section 56 of the charter, amended Act No. 46 of 1926, reads, in part, as follows: “That the Commission Council shall have no power to make or renew, or extend any lease or make any sale of city property except after advertisement for five separate times within thirty (30) days and free competition and adjudication thereof by the Commissioner of Public Property to the highest or lowest bidder, * * *.”
The question before us is whether that portion of Paragraph (c) of Section 1, which permits the City to sell certain property “in accordance with the terms of the gift, bequest or donation” has application to the particular property with which we are concerned, or whether the title to this particular property is in such status that the sale of the property is controlled by Section 56, with the result that it may be sold only “after advertisement for five separate times within thirty (30) days and free competition * *
The prospective purchaser, the First National Life Insurance Company, concedes that there can be no question of the applicability of the last portion of paragraph (c) of Section 1 to such property as is held in trust “for public, charitable, or other purposes,” but contends that that last portion has no application where the ownership of property is in fee simple. This argument is 'based on the interpretation which counsel for the insurance company argue may possibly be placed on the entire paragraph as a result of the punctuation which appears therein. Counsel point to the fact that there is a comma after the words “in fee simple,” separating those words from the words “or in trust * * *.” And they argue that by that comma there are divided into two groups property which may be received by the City by gift, bequest or donation, the first of which embraces property owned in fee simple and the second of which includes property held in trust, and they say that the comma after the words “in fee simple” may possibly be given the effect of preventing anything, appearing after the comma, from qualifying or in any way referring to anything which appears in the paragraph before that comma. In other words, they say that possibly it may 'be held that the permission to sell in accordance with the terms of the gift, bequest or donation may be held to refer only to property held in trust and not to property held in fee simple, and they say that the property which is here involved is owned by the City in fee simple and not in trust.
Pretenmitting, for the moment, the question of whether this particular property may be classified as held in fee simple or as property held in trust, we have no difficulty in reaching the conclusion that the provision set forth in the last part of Section (c) of Paragraph 1 refers to any property which may be acquired by the City by gift, bequest or donation, whether in fee simple or in trust whenever the gift, bequest or donation contains terms or conditions controlling the method by which the City may dispose of such property.
The argument that the presence of the comma after the words “in fee simple” might make possible a holding that this property might be sold only in accordance *705 with 'the provisions of Section 56 of the City charter is 'based bn a decision which this Court Rendered in Lewis v. First National Life Insurance Co., La.App., 199 So. 196. In that case we were called upon to interpret a clause in an industrial life insurance policy. It was provided that, on certain conditions, the policy should be void. There we,re other contingencies, on the occurrence of which recovery was to be limited to ,one-half the face of the policy. We were not concerned with the conditions under which the policy 'would have been void, but were interested only in determining whether only one-half of the face of the policy was due. It was provided that “ * * * if the insured shall die from Heart Disease, Tuberculosis, Chronic Bronchitis, Cancer, Bright’s Disease, Liver .Trouble, Pellagra, Cerebral Hemorrhage, Paralysis, High Blood Pressure, or any chronic diseases contracted before this Policy has been in force for twelve (12) months, only one-half the sum otherwise provided for in this Policy will be payable, * * *
The insured died from heart disease. The defendant contended that, under the terms of the policy, there could be no recovery regardless of when the disease may have been contracted, and the plaintiff contended that the twelve-months provision quoted above applied to heart disease, as well as to any other disease, and that, therefore, there could be a recovery unless the insurer could show that the heart disease had been contracted before the policy had been in force twelve months.
We held that under the quoted provision of the policy there were recognized two distinct grodps of diseases which might affect recovery under the policy. In the first there were set forth 'by name those from which there could be a recovery of only one-half regardless of the time at which the disease may have been contracted, and among those was heart disease, and in the second group there were set forth any chronic disease which may have been contracted before the policy had been in force for twelve months.
We said that since the two groups were divided by a comma, the twelve-months provision applied only to those which were included in the clause which-followed the comma, and since heart disease was included in the group which was set forth in the clause which preceded the comma, - the twelve-months provision did not apply and there could be recovery for only one-half regardless of whether the heart disease was contracted prior to the expiration of twelve months following the issuance of the policy or thereafter.
It was not so much the presence of the comma after the first group of diseases as the fact that there was no comma after the second group which separated them from the twelve-months provision which led us to the conclusion that the twelve-months provision applied only to the second group and not to the first.
It is the reasoning in that case which the insurance company in the case at bar points to and -relied upon for its contention that paragraph (c) of Section 1 of the charter of the City of New Orleans, the last'part of which provides for the sale by the City of certain property in accordance with the terms of the gift, bequest or donation, may possibly be held to have no application to property owned in fee simple by the City, since there is a comma immediately following the words “property in fee simple” and immediately prior to the words “in trust.”
The reasoning employed in the First National Life Insurance Company case referred to does not require such a holding here. Here the punctuation of paragraph (c) of Section 1 indicates plainly that'-it was the intention of the framers of that statute to give to the City the right to receive property either in fee simple or in trust and to authorize the City, whether such property ■ should be given to it in fee simple on conditions or in trust on conditions, to carry out the -terms of the gift.
We see nothing in the wording or in the punctuation of this paragraph which requires a holding that the last portion which authorizes the City -to sell any such property in accordance with the terms -or conditions by whi-ch it was received should be held to be limited -in its application to such property as may be held in trust. On the contrary, it should be noted that the words *706 used in the first part of the paragraph by which the City is authorized to receive “bequests, gifts and donations”, either in fee simple or in trust, is almost identical with that used in the last portion under which the City is authorized to dispose of such property in accordance with the terms of the “gift, bequest or donation”.
Furthermore, we are not at all sure that this property should be classified as property held in fee simple. It is true that the City is given full and complete title to it, but with it the City can do nothing not in accordance with the terms of the trust agreement. It could retain it and apply the income from it to the purpose of the Institute, or if the Institute should prefer, it could sell it and apply the proceeds to the purchase of other property, but even then it could apply thé income from such property only to the operation of the Institute.
Counsel for the insurance company argue that although the donor could have created a trust in favor of the Institute and could have given title to the Institute itself, he did not do so but instead provided that title should go to the City direct and provided too that such property as might be bought should be exempt from taxation, and they argue that these provisions made such property “locus publicus” with the result that it could be disposed of only in accordance with Section 56, that is to say. at public sale and after advertisement.
It is our opinion that the term “locus pu'blicus” does not apply to such property. That term is applied only to property owned by a municipality and used by it in the conduct of the government of the municipality. It certainly can -have no reference to property given to a city not for use in the conduct of the government but donated solely on condition that it be used for the creation of a fund to be devoted to a specifically designated charity.
The right of a municipality to accept and administer such a trust is conceded by the appellant as indeed it must be. See 63 C.J.S., Municipal Corporations, § 960; Mary’s Succession, 2 Rob. 438; Girard v. City of New Orleans, 2 La.Ann. 897; State v. McDonogh’s Ex’rs, 8 La. Ann. 171; Perin v. McMicken’s Heirs, 15 La.Ann. 154; Staub’s Succession, 123 La. 119, 48 So. 766, 131 Am.St.Rep. 350; Thompson’s Succession, 123 La. 948, 49 So. 651; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237; 10 A.L.R. 1368.
But regardless of whether the property in question is held by the City in fee simple or in trust, we are certain that the right to dispose of it at private sale and without advertisement is given to the City by paragraph (c) of Section 1 of its charter.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.