ELLIS, Judge.
In accord with the Uniform Declaratory Judgment Act (LSA-R.S. 13:4232-13:4246) the plaintiff instituted this action for determination of its rights against the City of New Orleans and the State Mineral Board under an oil, gas and mineral lease dated July 11, 1951 and granted by the City of New Orleans to the plaintiff.
There is no dispute as to the facts which were agreed upon and are substantially the same as stated in the briefs of counsel for plaintiff and the State Mineral Board.
It is shown that in 1914 Edward Wisner made a donation inter vivos to the City of New Orleans, in trust, of certain lands situated in Lafourche Parish (and in other parishes). The purposes of the trust was the accomplishment of certain charitable objectives. After the death of Eward Wis-ner his heirs brought suit to set aside the donation. In 1929, the City of New Orleans, Trustee, and the various beneficiaries of the trust, compromised with the Wisner heirs, which compromise was embodied in a judgment of the Civil' District Court for the Parish of Orleans, dated April 1, 1930. *105 Pursuant to the agreement of compromise, an Advisory Committee, known as the Edward Wisner Donation Advisory Committee, composed of five members, was appointed to advise the Mayor of the City of New Orleans (who was to act for the Trustee), and it was provided that the Mayor should administer the trust property upon the advice and with the consent of the majority of the members of the Committee.
On July 11, 1951, the City of New Orleans, represented by its Mayor, acting with the consent of a majority of the Advisory Committee, granted in favor of The California Company for a cash consideration of $15,200 an - oil, gas and mineral lease affecting certain of the lands situated in Lafourche Parish, held by the City of New Orleans under the Wisner donation.. It was agreed in said lease that actual drilling of a well upon the leased premises would be commenced within 6 months from date, subject to extension in the event of con-testation of the validity of the lease.
This lease in question was granted without advertisement or competitive bidding and without securing the approval of the State Mineral Board thereto. Since the Courts had not affirmatively, decided whether such actions were reqüired by law in order for the Trustee to execute a valid mineral lease, The California Company brought this declaratory action to'have said questions set at rest. The action was brought against the State Mineral Board, since it is the state agency charged with the duty of approving or disapproving mineral leases by a “municipality,” and against the City of New Orleans, as Trustee under the Wisner donation. The beneficiaries of the Trust were not considered to be necessary parties and, accordingly, were not cited.
As an alternative demand, Plaintiff .asked to be declared entitled to the return of the cash consideration paid by it should the validity of the lease not be upheld.
The case was submitted on briefs, upon the pleadings and upon an agreed stipulation of fact to the District Court which rendered a judgment in favor of the plaintiff as against the State Mineral Board and the City of New Orleans, and in favor of the City of New Orleans as. against the State Mineral Board, and the latter only has appealed devolutively to this Court,
The plaintiff contends that under the charter of the City of New Orleans (Act 159 0f 1912, as amended) with reference to the management, sale, lease or disposition of property by the City, the lease in question js governed exclusively by Paragraph (c) Df Section 1 as amended by Act No. 338 of 1936, which reads as follows':
“It (the City) may receive bequests, gifts and donátions of all kinds of property in fee simple, or in trust for public, charitable, or other purposes, and do all things and acts necessary to carry out the purpose of such gifts, bequests and donations, with power to manage, sell, lease or otherwise dispose of the same in accordance with the terms of the gift, bequest or donation”. (Brackets ours)
On the other hand, it is the contention of the State Mineral Board that the lease in question is subject to the provisions of Louisiana Statutes Annotated — Revised Statute 30:151, et seq, which provides methods of making mineral leases to be followed by State agencies.
Louisiana Statutes Annotated — Revised Statute 30:151 under the heading: "Sub-part B. Leases by State Agencies” provides :
“ ‘Agency’ defined — -In this Sub-part the term ‘agency’ means a levee district, drainage district, road district, school district, school board or other board, commission, parish, municipality, state university, state college, state penal or charitable institution or agency, unit or institution of the state or subdivision thereof.”
LSA-R.S. 30:153 provides:
“Agencies may lease through state •mineral board — Any agency may by resolution direct the state mineral board to lease its land in the manner provided in Sub-part A of this Part.”
LSA-R.S. 30:155 provides:
“Alternative procedures — If any agency determines not to avail itself of the provisions of R.S. 30:153, it *106 shall lease no lands for mineral purposes unless a written application is made, and the lands are advertised and let in the manner provided by this Sub-part.”
LSA-R.S. 30:156 provides:
“Procedure when agency leases its own land — A person desiring to lease from a state agency shall make application with deposit to the agency in the same manner as is set forth in R.S. 30:125 for application with deposit to the mineral board. The agency shall itself advertise, receive bids at its domicile, and lease in the same manner and subject to the same restrictions applicable to leases by the State Mineral Board under R.S. 30:126 and 30:127. The agency has the same powers over leases granted by it as are granted the State Mineral Board in R.S. 30:129.”
LSA-R.S. 30:158 provides:
“Approval of lease by board — No lease executed under the authority of this Sub-part shall be valid unless the agency obtains its approval by the State Mineral Board. A lease made under the provisions of this Sub-part which is not approved by the State Mineral Board and countersigned by the duly authorized officer of that body is null and void.”
 Counsel for plaintiff and the defendant agree that the charter of the City of New Orleans is a special or local law, Kearns v. City of New Orleans, La.App., 160 So. 470, and that the Mineral Board Act is a general law, Cf. State v. Humble Oil and Refining Co., 195 La. 457, 197 So. 140, and that a special law is not repealed by a general law “unless the intent to repeal •is clear and unmistakable.” State ex rel. Ideal Savings & Homestead Ass’n v. City of New Orleans, 186 La. 705, 173 So. 179, 182; Paepcke Leicht Lumber Co. v. Vantrompt, 137 La. 743, 69 So. 159; Hayes v. Morgan’s L. & T. R. & S. S. Co., 117 La. 593, 42 So. 150; State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46; Third District Land Co. v. Geary, 185 La. 508, 169 So. 528.
There is no doubt that there was never any intent on the part of the Legislature to repeal Section 1, par. (c) of the charter of the City of New Orleans as amended by Act 338 of 1936 by the enactment of LSA-R.S. 30:151 et seq., supra, for this Section and paragraph have twice been reenacted by the Legislature (Act 119 of 1948; Act 10 of 1948 (E.S.)), which, of course, was after the passage of Act 162 of 1940 which was the source of LSA-R.S. 30:151 et seq.
In the case of State ex rel. Ideal Savings & Homestead Ass’n v. City of New Orleans, supra, the question was whether a provision of the New Orleans city charter (Act 159 of 1912) which made paving liens prescriptible was repealed by a general law, Act 46 of 1918, which provided in effect that paving liens generally will be subject to a three year prescriptive period, it was stated:
“The act on which plaintiff relies in support of its plea of prescription was adopted six years after a complete charter was granted to the city by Act No. 159 of 1912. The fact that the city charter, with specific references to paving, paving liens, and their duration, has been amended three times since the adoption of Act No. 46 of 1918, once in 1921, once in 1926, and again in 1936, in each of which amendments the Legislature reiterated the statement in the charter of 1912 that these paving liens should continue to exist until full and final payment, shows unmistakably that the Legislature has never intended that these paving liens should prescribe in three years, as contended by counsel for plaintiff.
“(2) In the Kearns Case, supra, the court cited numerous authorities holding that city charters granted by special acts of the Legislature are special laws set apart from the general body of the laws of the state, and that their provisions are not repealed by a general statute unless the intent to repeal is clear and unmistakable. In line with the Kearns Case in this respect is the case of City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309.”
*107 Furthermore, the charter of the City of New Orleans also contains another provision, viz., Section 56 as amended, which in part is as follows:
“That the Commission Council shall’ have no power to make or renew, or extend any lease or make any sale of city property except after advertisement for five separate times within thirty (30) days and free competition and adjudication thereof by the Commissioner of Public Property to the highest or lowest bidder, * *
It is obvious that the two above quoted sections of the city charter of New Orleans are not in conflict, for one deals with property received by the city as a bequest, gift, or donation or in trust for public, charitable or other purposes, while the other refers to property owned by the city.
The two provisions of the city charter of New Orleans above quoted were considered by the Orleans Court of Appeal in First Nat. Life Ins. Co. v. City of New Orleans, 48 So.2d 702, 704, which was an action for a declaratory judgment to settle the question as to whether the city could sell property in accordance with paragraph (c) of Section 1 that had been acquired under the terms of a certain trust agreement set forth in a notarial act in which the city was given five thousand shares of the capital stock of the United Fruit Company, and under the terms of the trust agreement it was provided that the city should sell the stock, or so much thereof as might be necessary, and with the proceeds purchase all the capital stock of a realty company which was the sole owner of the real estate in question in that case, and it was further provided that the realty company would be liquidated and thus the city would acquire direct title to the property, and it was also provided in the agreement that a corporation to be known as the Institute of Mental Hygiene for the City of New Orleans was to be organized and the property acquired from the Realty company was to be managed and the income used by the Institute of Mental Hygiene. It was also provided that the institute was authorized to determine and decide whether or not any of the property acquired should be “sold, leased or otherwise disposed of,” and should it decide to sell any of the property the sale might be public or private upon such terms or conditions as the Institute might fix. The Court posed the following question:
“The sole question presented then is whether the City, having thus acquired the property, may dispose of it at private sale and without advertisement.”
The holding of the Court was as follows:
“It is our opinion that the term ‘locus publicus’ does not apply to such property. That term is applied only to property owned by a municipality and used by it in the conduct of the government of the municipality. It certainly can have no reference to property given to a city not for use in the conduct of the government but donated solely on condition that it be used for the creation of a fund to be devoted to a specifically designated charity.
“The right of a municipality to accept and administer such a trust is conceded by the appellant as indeed it must be. See 63 C.J.S., Municipal Corporations, § 960; Mary’s Succession, 2 Rob. 438; Girard v. City of New Orleans, 2 La.Ann. 897; State v. McDonogh’s Ex’rs, 8 La.Ann. 171; Perin v. McMicken’s Heirs, 15 La.Ann. 154; Staub’s Succession, 123 La. 119, 48 So. 766, 131 Am.St.Rep. 350; Thompson’s Succession, 123 La. 948, 49 So. 651; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237; 10 A.L.R. 1368.
“But regardless of whether the property in question is held by the City in fee simple or in trust, we are certain that the right to dispose of it at private sale and without advertisement is given to the City by paragraph (c) of Section 1 of its charter.”
As above stated, there is no dispute between counsel that the city charter, a special law, should prevail over LSA-R.S. 30:151 to 30:158, a general law, but the sole con *108 tention of counsel for the Mineral Boaid is stated thusly in his brief:
“The lower court also pointed out that the City. Charter, a special law, should prevail over' R.S. 30:151-158, a general law. We agree with the principle enunciated but contend that such principle is entirely irrelevant to the -facts involved. Act 162 of 1940, as amended by Act 133 of 1944, did not substitute new for extant procedure. It only adds special procedure to that existing.”:
We cannot agree with this contention for paragraph (c) of Section 1 of the City Charter, -which is still law and governs property coming to the city of New Orleans under its provisions, is in direct conflict with LSA-R.S. 30:151 et scq., for under the latter the City of New Orleans would be required to advertise and to have competitive bidding and the approval of the State Miperal Board,- whereas under Paragraph (c) of- Section 1 of the City Charter should the donation, bequest or trust agreement provide as in the First National Life Ins. Co. case, supra, for a private sale or lease, such would be valid.
In the present case, practically complete powers of administration were conferred upon the City of New Orleans, Trustee, save with' some restrictions with which we are 'not concerned. There can be no question of the right of the trustee to grant a lease upon the advice and approval of the Edward Wisner Donation and Advisory Committee, and in view of the fact that the trust agreement did not restrict the trustee as to the manner and method by which he could lease, the Trustee could then execute either a private or a public lease.
We therefore conclude that the leasing of the property in question is controlled by paragraph (c) of Section 1 of the City Charter of the City of New Orleans, and that LSA-R.S. 30:151 et seq., has no application to the lands in question, and that the private lease by the City to the plaintiff is valid.
The judgment of the District Court is .accordingly affirmed. ’ " -